UNITED STATES of America, Appellee,

v.

**Robert L. PETERS, Appellant.**

**No. 77–1972.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 9, 1978.
Decided Sept. 28, 1978.

Daniel B. Edelman, Washington, D. C. (appointed by this court), for appellant.

Peter C. DePaolis, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Also David S. Krakoff, Asst. U. S. Atty., Washington, D. C., entered an appearance for appellee.

Before LEVENTHAL and MacKINNON, Circuit Judges, and JAMESON,* Senior District Judge.

Opinion for the court filed by JAMESON, Senior District Judge.

JAMESON, Senior District Judge:

Appellant, Robert Lincoln Peters, was convicted following a jury trial of interstate transportation of a forged security (count one), in violation of 18 U.S.C. § 2314; and forgery (count two) and uttering a forged security (count three), both in violation of D.C.Code § 22–1401.[1] He contends that (1) all counts should have been dismissed for failure to comply with the Speedy Trial Act, 18 U.S.C. §§ 3161–3174; (2) the district court should have granted a mistrial or have stricken the testimony of the Government's key witness for failure to comply with the Jencks Act, 18 U.S.C. § 3500; (3) the proof was insufficient to support a conviction for forgery because (a) his writing a name on the payee line of a check did not constitute a violation of the statute and (b) there was a fatal variance between the charge in the indictment and proof at trial; and (4) he was deprived of a fair trial by prosecutorial misconduct in closing argument. We vacate the conviction on count two and otherwise affirm the judgment.

## FACTUAL BACKGROUND

In early April of 1975, a burglary took place at the Maple Rock Distributing Co. of Lexington, Virginia. Among the missing items were several checks, four of which are material to this case. Special Agent Kirby Major of the Federal Bureau of Investigation was assigned to investigate the burglary, with particular attention to the whereabouts of Lee R. Lacy, who was later to become a key prosecution witness. In the course of his investigation, Major, on three occasions, contacted the appellant, who apparently was not yet a suspect, to inquire as to the whereabouts of Lacy. Lacy was thereafter apprehended in Philadelphia. On February 26, 1976, he gave a statement to Major in which he denied any participation in the Maple Rock burglary, but admitted that he had participated with appellant and Roosevelt Moses[2] in the forgery and passing of four Maple Rock checks in Washington, D. C.

Lacy pleaded guilty on October 14, 1976 to one count of interstate transportation of stolen securities. Under the terms of a plea agreement, on the same day he presented testimony to a grand jury in which he implicated appellant in the forgery and passing of the Maple Rock checks. The grand jury subpoenaed handwriting exemplars from appellant, which he voluntarily gave. Although the comparison of these exemplars with the writing on the checks was completed on November 15, 1976, the grand jury took no action with respect to appellant at that time.

On January 13, 1977, FBI agents procured a warrant for appellant's arrest.[3] He was arrested on January 18 and charged by complaint with one count of interstate transportation of a forged security. This complaint was dismissed by the Government pursuant to a praecipe dated March 14 and filed March 21, 1977. On March 23, 1977, the grand jury returned the indictment under which appellant was tried and convicted, alleging four counts of interstate transportation, one count of forgery, and four counts of uttering. Counts eight and nine alleged the uttering and interstate transportation of Maple Rock check number

---

* Of the United States District Court for the District of Montana, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. The basis of the conviction on these three counts was check number 15867, drawn upon the First National Bank of Lexington, Virginia, payable to "Leroy Jones", in the amount of $168.38 and uttered at the Virginia Market in Washington, D. C., on or about April 18, 1975.

2. Moses was not a witness at trial. He had been killed in a bank robbery attempt shortly after the events which resulted in the charges against appellant.

3. Appellant voluntarily appeared at FBI headquarters in response to a request by an FBI agent, at which time the arrest warrant was executed.

15898, the check involved in the dismissed complaint.

Appellant filed motions to dismiss the indictment for pre-arrest and pre-indictment delay and to suppress statements. Following a hearing, the court orally denied the motion to suppress, ordered dismissal of counts eight and nine, and reserved a ruling on the remainder of the motion to dismiss. Later in a written memorandum the court granted the motion to dismiss counts eight and nine for failure to comply with the Speedy Trial Act, and denied the motion with respect to the first seven counts.

At the opening of the trial and before selection of a jury, the Government informed the court that it was unable to produce a transcript of Lacy's grand jury testimony, which appellant had requested. Following a hearing on the question of compliance with the duty to preserve Jencks materials, the court took the matter under advisement and later denied appellant's motion to strike Lacy's testimony or grant mistrial. The court did, however, give a cautionary instruction, patterned after the "missing witness" instruction, in an attempt to neutralize any prejudice resulting from the loss of Lacy's grand jury testimony.

At trial, the Government called a handwriting expert, who stated that in his opinion the name "Leroy Jones", written on the payee space of Maple Rock check number 15867, was written in appellant's hand. He also identified the endorsement of "Leroy Jones" on the back of the check as the handwriting of Lacy. He could reach no conclusion, however, as to whether appellant's handwriting appeared on either side

of the two remaining checks.[4] Agent Major testified regarding his investigation of the alleged offenses including his taking a written statement from appellant, which was admitted in evidence as a Government exhibit.

Lacy testified that he met appellant and Moses at a park in Washington, where one or both of them solicited his participation in a scheme to pass the Maple Rock checks. According to Lacy, appellant and Moses gave him check number 15867, which he endorsed in the name of "Leroy Jones" and cashed at a grocery. The two other checks were made and passed later in the same fashion. In all cases, according to Lacy, the proceeds of the checks were divided among the three participants.[5]

The trial court instructed the jury that they could find appellant guilty of forgery if he was found to have falsely completed any part of the document. The jury was further instructed that one who aids and abets in the commission of an offense is punishable as a principal. In response to an inquiry from the jury, the court also instructed that the name "Leroy Jones" on the face of the check did not constitute a "signature" within the meaning of the law. The jury returned a verdict of guilty with respect to the three counts dealing with check number 15867, and not guilty as to the remaining counts.

## I. SPEEDY TRIAL ACT

■ Appellant filed a pretrial motion to dismiss the indictment[6] for failure to comply with the provisions of the Speedy Trial Act, 18 U.S.C. § 3161,[7] as implemented by

---

**4.** When counts eight and nine were dismissed, the trial judge apparently ruled *in limine* that reference to check number 15898 would be excluded at trial on relevance grounds.

**5.** Appellant did not testify at the trial. In his *written statement and in testimony* at a pretrial hearing, he stated that Lacy and Moses approached him and solicited his participation. He admitted writing "Leroy Jones" on the payee space of check number 15867, but claimed that he warned Lacy not to pass the check. He stated he thought the check was to be given to a "bootlegger" to secure a loan.

Appellant denied ever having received any of the proceeds of the checks.

**6.** Violation of the Speedy Trial Act is not *per se* grounds for dismissal of an indictment (see 18 U.S.C. § 3162; Local Rule 2–7 15(e)), particularly with respect to cases initiated prior to the full implementation date for the Act, July 1, 1979. Fed.R.Crim.P.Rule 48(b), however, gives a trial judge discretion to dismiss an indictment for unnecessary delay in indictment or trial.

**7.** § 3161 provides, *inter alia*:

* * * * * *

D.C.District Court Rule 2–7.[8] The trial court found that the Act and the Local Rule required the filing of an indictment, within 60 and 45 days respectively,[9] of appellant's arrest on the charge alleged in the original complaint. The indictment was in fact returned 64 days after appellant was arrested. Finding that the charges in counts eight and nine of the indictment were identical in content to the offense charged in the complaint, the court held that Speedy Trial sanctions should be applied, including dismissal, pursuant to Fed.R.Crim.P.Rule 48(b), of counts eight and nine.[10]

> (b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. * * *
> (c) The arraignment of a defendant charged in an information or indictment with the commission of an offense shall be held within ten days from the filing date (and making public) of the information or indictment . . . . . Thereafter, where a plea of not guilty is entered, the trial of the defendant shall commence within sixty days from arraignment . . . . .
> (d) If any indictment or information is dismissed upon motion of the defendant, or *any charge contained in a complaint filed against an individual is dismissed or otherwise dropped,* and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or *an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode,* the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.
> * * * * * *
> (h) The following periods of delay shall be excluded in computing the time within which *an information or indictment must be filed* . . . . :
> (6) If the *information or indictment is dismissed upon motion of the attorney for the Government* and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

With respect to counts one through seven, however, the court was of the opinion that the offenses involving the three checks covered by those counts were distinct, both legally and factually, from those involving the check in the original complaint and in counts eight and nine. The court concluded that appellant's "behavior was not . . part of the same criminal episode" under § 3161(d), that "each violation charged by counts one through seven of this indictment could have been prosecuted separately, [and it] cannot be said that the offenses charged were 'required to be joined' under our Local Rule 2–7 4(b)".[11] 434 F.Supp. at 362. The

* * * * * *

(emphasis added)

8. The Act creates standards and requires the promulgation of plans within each federal circuit and district to meet those standards. 18 U.S.C. §§ 3165, 3166. Local Rule 2–7 was formulated to satisfy the plan obligation for the District of Columbia.

9. The Act provides an interim phase-in period during which the time limits are less stringent than those under the Act as finally effective. 18 U.S.C. §§ 3161(f), (g), 3163, 3164. Districts are free, however, to create interim limits which are more stringent than those provided in the Act. Thus, the arrest to indictment period under the Act, 18 U.S.C. § 3161(f), is sixty days for persons arrested between July 1, 1975 and July 1, 1976. The time limit under Local Rule 2–7 4(a)(1) is forty-five days.

10. The district court's opinion is reported at 434 F.Supp. 357 (D.D.C.1977).

11. Local Rule 2–7 4 reads in pertinent part:
    (b) *Superseding Charges.* If, after a complaint has been filed, an indictment or information is filed which charges the defendant *with the same offense or with an offense required to be joined with that offense,* the time limit applicable to the subsequent charge will be determined as follows:
    (1) If the original complaint was dismissed *on motion of the defendant before the filing* of the subsequent charge, the time limit shall be determined without regard to the existence of the original charge.
    * * * * * *
    (3) If no complaint is filed or if the original complaint was dismissed on motion of the United States Attorney before the filing of the subsequent charge, the indictment or information shall be filed within the original time limit, but the period during which the

court therefore held that the Speedy Trial sanction would not apply to counts one through seven.

Appellant contends that all of the counts of the indictment charge offenses "arising from a single criminal episode: The alleged forgery, uttering and transportation within a short time period of checks drawn on a single payor and apparently stolen in a single burglary". Accordingly it is argued that the failure to dismiss counts one through seven "runs foul of the strict prophylactic rule established by 18 U.S.C. 3161(d)"—a rule allegedly much more strict than the "required to be joined" language of Local Rule 2–7 4(b), upon which the district court relied in denying the motion to dismiss.

The Government contends that appellant has "incorrectly based his analysis upon the provisions of section 3161(d)", which "deals with the situation where, upon motion of the defendant, an information or indictment is dismissed on other than speedy trial grounds". Rather, the Government argues, section 3161(h)(6), as implemented by Local Rule 2–7 4(b)(3), "specifically deals with the problem presented in this case", i. e., "where the Government, on its own motion, dismisses a charge and then later seeks to recommence the prosecution". Applying section 3161(h)(6) and Local 2–7, the Government contends that the offenses alleged in the complaint were distinct from those charged in counts one through three of the indictment, that they were not "required to be joined" under any recognized rule, and that the time restraints of the Act and the Local Rule did not require dismissal.

The respective arguments of counsel suggest ambiguities in the statutory provisions relating to superseding charges which are difficult to resolve even with the aid of the legislative history of the Act. At the out-

set, however, it is noted that § 3161(d) is applicable not only where an indictment or information is dismissed upon motion of the defendant, but also where "any charge contained in a *complaint* against an individual is dismissed or otherwise dropped". § 3161(h)(6) is applicable where an "*indictment* or *information* is dismissed on motion of the attorney for the Government". (emphasis added)

In a comprehensive analysis of the Speedy Trial Act, Professor Frase discusses these statutory provisions.[12] He states in part:

> Section 3161(d) provides that the time limits for indictment, arraignment, and trial begin to run anew when the original charge is dismissed upon motion of the defendant, or if the original charge was a complaint and it is dismissed by either party or on the court's own motion.

After quoting § 3161(h)(6) (see note 7) he continues:

> If the period between the dismissal of the first charge and the filing of the second is excludable, this implies that the "clock" is still running.
>
> Since the filing of superseding charges is entirely within the control of the Government, such a rule makes sense: the Government should not be permitted to obtain additional time by filing slightly different charges against the same defendant for the same criminal episode. Yet section 3161(d) clearly permits the Government to do just that with respect to charges in a complaint. Moreover, it would seem to allow the Government to file a new complaint before dismissing the old one, in which case the defendant would not have to be released from custody or from his bail obligations at any time. Clearly such a paper shuffle would violate the spirit if not the letter of the law, and if experience with the Act reveals a tendency for dismissed and refiled

defendant was not under charges shall be excluded from the computation.

12. "The Speedy Trial Act of 1974", 43 U.Chi.L. Rev. 667 (1976) by Richard S. Frase, Research Associate, Center for Studies in Criminal Justice, The University of Chicago Law School and

Reporter, Speedy Trial Act Planning Group, Northern District of Illinois. Professor Frase calls attention to "numerous unresolved policy issues, ambiguities, and drafting errors" and attempts to "identify, and help to resolve, the major issues and problems". *Id.* at 670.

complaints to increase, section 3161(d) should be amended to conform to the "tacking" approach applicable to superseding indictments.

43 U.Chi.L.Rev. at 696–697

■ We are persuaded that Professor Frase is correct in concluding that § 3161(d), rather than § 3161(h)(6), is applicable when a complaint, as distinguished from an information or indictment, is dismissed by the Government.

The analysis of § 3161(d) in the Senate Report, No. 93–1021 93rd Cong., 2d Sess. 26, 33 (1974) reads:

Subsection 3161(d) allows the time limits imposed by subsections 3161(b) and (c) to begin to run afresh should an indictment or information be dismissed upon defendant's motion on grounds other than non-conformance with speedy trial time limits, and a subsequent complaint charging the defendant with the same offense or with an offense based on the same criminal conduct or episode is filed.

This subsection allows latitude to the prosecutor to re-institute prosecution of a criminal defendant whose case has previously been dismissed on nonspeedy trial grounds without having to comply with the time limits imposed by the filing of the earlier complaint. To require a prosecutor to conform to indictment and trial time limits which were set by the filing of the original complaint in order to re-open a case on the basis of new evidence would be an insurmountable burden. Thus, when subsequent complaints are brought, the time limits will begin to run from the date of the filing of the subsequent complaint.

The Committee is concerned that this provision not be used to evade the speedy trial time limits set out in this Act. The prosecutor should not be able to avoid the speedy trial time limitations when his carelessness in preparing the original complaint or indictment has resulted in a dismissal under this section. Therefore, when a judge dismisses an original information or indictment on other than speedy trial grounds he should, neverthe-

less, take into consideration the defendant's right to speedy trial under the statute and under the Constitution. For example, the judge might want to order that the original dismissal be with prejudice so that the prosecutor could not reindict several months after a carelessly drawn indictment has been dismissed.

Having determined that § 3161(d) is applicable, two questions are presented: (1) the effect of dismissal of the complaint by the Government more than 60 days after the arrest; and (2) whether the offenses charged in counts one through three "were the same offense or an offense based on the same conduct or arising from the same criminal episode" as the charge in the complaint.

■ It may be argued that since the Government did not dismiss the complaint on "speedy trial grounds", the time limits of 3161(b) began to run when the indictment was filed. This would probably be true if the complaint had been dismissed within the 60 day period. Here, however, the Government's praecipe for dismissal was filed 62 days after appellant's arrest. The complaint was clearly dismissible under the provisions of the Speedy Trial Act. We cannot believe that Congress intended that under these circumstances the time limits would begin to run anew from the date of the indictment, particularly in view of the excerpts from the Senate Report quoted above. We need not pursue this question further since we conclude that in any event counts one through three did not arise out of the "same criminal episode" as the charges in the dismissed complaint.

Appellant's entire argument with respect to the Speedy Trial Act is premised on his contention that the indictment as to all counts was barred by the fact that all counts arise "from the same criminal episode". Neither party has cited, nor have we found, a case construing the term "same criminal episode" under the Speedy Trial Act. Similar language, however, "a crime based on the same conduct or arising from the same criminal episode", is used in § 2.2(a) of the American Bar Association

Standards for Criminal Justice Relating to Speedy Trial. The commentary to this section reads in part:

> The word "conduct" is usually taken to mean an act or omission, and thus covers those cases where several offenses arise out of the same act, as where a defendant recklessly operates an automobile and kills two people. "Episode" means "an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger and more comprehensive series". Webster, Third New International Dictionary 765 (1961). This would cover the killing of several people with successive shots from a gun, . . . the successive burning of three pieces of property, . . . or such contemporaneous and related crimes as burglary and larceny . . . or kidnapping and robbery. (citations omitted.) [13]

The legislative history of the Speedy Trial Act contains extensive references to the American Bar Association Standards relating to Speedy Trial. In 1973 in his opening statement to the Senate Subcommittee Senator Sam J. Ervin, a sponsor of the Speedy Trial Act and chairman of the Senate Subcommittee which considered the bill, said, "We can develop these time limits in light of what we feel should be an ideal, in much the same manner as the American Bar Association formulated its standards on Speedy Trial." A Georgetown Law Journal article which analyzes the ABA Standards is included in the hearings report. Senate Judiciary Subcommittee on Constitutional Rights, 93d Cong., 1st Sess., Hearings on S.

754, A Bill to give Effect to the Sixth Amendment, etc. (1973).[14] While the legislative history does not refer expressly to the ABA Standard in question, it seems logical by reason of the use of the same language in the Speedy Trial Act, to adopt the meaning of "same criminal episode" set forth in the ABA Standard commentary.

Both parties refer to *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), where the defendant had been charged with the armed robbery of two participants in a poker game. In the first trial he was found not guilty because of "insufficient evidence" to identify the defendant as one of the robbers. In the second trial he was convicted. The Court held that since it had been determined in the first trial that the defendant was not one of the robbers, the State, under the doctrine of collateral estoppel, was constitutionally foreclosed from relitigating that issue in another trial. In a concurring opinion, Mr. Justice Brennan used the term "same criminal episode". He criticized the "same evidence" test as allowing multiple prosecutions when there have been several victims, a single transaction is divisible into chronologically, discrete crimes, or different statutes allow prosecution for a single criminal act. Justice Brennan urged adoption of the "same transaction" test of same offense. The same transaction test would require, with certain limited exceptions, joinder at one trial of all charges against a defendant that "grow out of a single criminal act, occurrence, episode or transaction". *Ashe v. Swenson, supra*, at 453–454, 90 S.Ct. at 1199.

---

**13.** Examples given to illustrate the operative effect of the standard include the following: "C is arrested on January 1 and booked for theft No. 1; on January 3 he is taken into court on a compliant for theft and held to answer on that charge. Subsequent investigation establishes grounds also to proceed against the defendant for thefts No. 2 and No. 3, committed on other occasions, and therefore an indictment is obtained on January 20 for thefts No. 1, No. 2, and No. 3. The time for trial of theft No. 1 runs from January 3, but the time as to thefts No. 2 and No. 3 runs from January 20, because these latter charges are not based upon the same 'conduct' or same 'episode'."

**14.** The House Report to the companion bill to S. 754 refers to the ABA study as well as the Congressional committees and Presidential commissions which examined and commented on speedy trial issues. House Comm. on Judiciary; Speedy Trial Act of 1974, H.R.Rep.No. 1508, 93d Cong., 2d Sess. (1974). The Senate Committee report also discusses with approval part of the commentary to the ABA Standards. Senate Judiciary Committee, Report on the Speedy Trial Act of 1974, H.R.Rep.No.1021, 93d Cong., 2d Sess. (1974), U.S.Cong. & Admin. News 1974, p. 7401.

In *Ashe v. Swenson*, the defendant was charged separately with robbery of two persons at the same time and place. The two offenses, as Mr. Justice Brennan pointed out, could properly be considered a part of the "same transaction" and arising out of the "same criminal episode". In the instant case, however, appellant was not charged with robbery of the checks, but rather with interstate transportation of a forged security. All of the offenses charged in counts one through three occurred eight days before the offenses charged in the dismissed complaint and at a different place. The district court properly found that appellant's behavior was not part of the same criminal episode, but that each violation could have been properly prosecuted separately, and also that it "cannot be said that the offenses were 'required to be joined' under our Local Rule 2–7 4(b)".[15] We conclude that the indictment as to counts one through three was not barred by the Speedy Trial Act.

## II. JENCKS VIOLATION

█ Appellant contends that the court erred in declining to strike Lacy's testimony or declare a mistrial due to the unavailability of the transcript of his grand jury testimony. Appellant argues that exclusion of the testimony is an automatic sanction to be applied in every case in which the Government has negligently failed to preserve evidence, relying on the decision of this court in *United States v. Bryant*, 142 U.S.App. D.C. 132, 439 F.2d 642 (1971). Since neither *Bryant* nor any of the subsequent decisions of this court requires application of so severe a sanction without regard to the circumstances of the case, we find this contention without merit.

In *Bryant*, the court held that the duty of disclosure codified in the Jencks Act operates as a "duty of preservation" until such time as a request for discovery is made. For the future, we held that "systematic" and "rigorous" procedures for preservation of evidence should be promulgated, and that failure, through negligence or design, to follow such procedures would result in the imposition of sanctions. The primary issue in *Bryant* was not whether a violation of the duty of preservation had been shown, but rather "whether full sanctions for nondisclosure ought to be invoked absolutely, or whether imposition of sanctions ought to depend upon the circumstances of the material's disappearance". The court concluded that the circumstances of the disappearance were "relevant" to the question of sanctions.

While *Bryant* holds that the Government is subject to "sanctions" for negligent loss of evidence, it does not define with particularity what sanctions are appropriate, nor does it state that the ultimate Jencks Act sanctions detailed in 18 U.S.C. § 3500(d) are to be applied in every case. We have recognized in cases involving losses of evidence occurring both before and after *Bryant* that the question of which sanction is appropriate will be left to the discretion of the trial court. *United States v. Quiovers*, 176 U.S. App.D.C. 265, 539 F.2d 744 (1976); *United States v. Perry*, 153 U.S.App.D.C. 89, 95, 471 F.2d 1057, 1063 (1972). The trial judge possessed the discretion to remedy the loss of Lacy's grand jury testimony in order to assist rather than restrict the search for truth. *Perry*, 153 U.S.App.D.C. at 95, 471 F.2d at 1063. Our review is limited to the determination of whether the choice of sanction constituted an abuse of that discretion.

█ The record contains no suggestion of bad faith on the part of the Government. To the contrary, the testimony of the Government's witnesses describes in detail the procedures [16] used to assure preserva-

---

15. Appellant does not contend that the offenses charged were "required to be joined" and concedes that the district court's refusal to dismiss counts one through seven may have been a correct application of Rule 2–7. (Br. p. 19).

16. At the pretrial hearing, James Neal, the reporter who transcribed Lacy's grand jury testimony, described in detail the procedures followed by the court reporting company. According to Neal, his notes and tapes are cus-

tion of grand jury testimony and the large amount of time and effort expended in attempting to locate the tapes of Lacy's testimony when their loss was discovered.[17] We are presented with at most a case of negligent failure to comply with existing procedures.

Nor do we find evidence of any substantial prejudice to appellant in the failure to produce Lacy's grand jury testimony. In advance of trial appellant was furnished a copy of Lacy's statement to Agent Major and Assistant United States Attorney Anderton's notes on Lacy's testimony before the grand jury. Both corroborated Lacy's trial testimony. Lacy testified as to his complicity in the offense and his residence in prison. On cross-examination he admitted that he testified before the grand jury in the hope that the trial judge would consider it in mitigation of sentence. While access to the grand jury transcript might have assisted in attempting to impeach Lacy, it is by no means apparent that it would have had a significant impact on the jury's determination of Lacy's credibility.[18]

The trial judge instructed the jury:

You are instructed that if you find that [Lacy's grand jury testimony] could have contained material assistance on the issues in this case and that their absence has not been accounted for or sufficiently explained to you, then you may deem it appropriate infer [sic] that those statements which were not produced would not corroborate the testimony of the witnesses who made them.[19]

The judge also instructed the jury that "the defendant [had] an absolute right under law" to obtain copies of Lacy's prior testimony, and that the testimony had been "lost or misplaced". Under the circumstances of this case, where neither bad faith nor a significant probability of prejudice has been shown, we hold that the trial judge did not abuse his discretion in allowing the jury to consider Lacy's testimony under an appropriate cautionary instruction.

## III. PROOF OF FORGERY

Appellant contends that he was improperly convicted of forgery. The second count of the indictment charged that he "with intent to defraud and utter, did falsely make and forge the signature Leroy Jones on a certain bank check". The proof clearly showed that appellant wrote the name of Leroy Jones as payee on the check. Appellant argues that insertion of the name of a payee (even though fictitious) is not forgery.

On appeal the Government argues that the proof showed that appellant aided and abetted Lacy in signing the endorsement of Leroy Jones on the back of the check. The proof viewed favorably to the Government, does show that.[20] If that were all there was to the matter, there would be no problem.

The difficulty arises because the prosecution also presented a second theory, that the insertion of the name of Leroy Jones on the face of the check was a forgery. The judge instructed the jury that appellant could be

tomarily marked with the date and name of the court calling the grand jury, and then placed in a locked envelope in the "grand jury room" vault of the reporting company. The envelopes are placed in chronological order, and only the reporter or his transcriber has access thereto. Neal also testified as to extensive search efforts when the loss of the tapes was discovered. In his opinion the tape was lost during a period when the person in charge of the "grand jury room" was overworked and therefore unable to carry out his duties.

17. Assistant United States Attorney Charles Anderton testified that he personally searched every envelope in the grand jury room in an effort to locate the tape.

18. It is reasonable to infer from the jury's verdict that it partially discredited Lacy's testimony. The jury convicted appellant only on the count involving the check which the prosecution's handwriting expert could connect to appellant. Appellant was acquitted on those counts which relied solely on Lacy's testimony.

19. The giving of a cautionary instruction, such as this one, is suggested as an appropriate sanction in *United States v. Bundy*, 153 U.S. App.D.C. 191, 194, 472 F.2d 1266, 1269 (1972) (Leventhal, J., concurring).

20. Tr. 7/18/77 p. 131; see also, p. 78.

 

convicted on the second count if he wrote in the name of the payee. Appellant argues that this was a variance from the charge that he forged the "signature" of Leroy Jones. The Government replies that the error, if any, was cured when the jury sent a note asking whether "the name Leroy Jones on the face of the check . . . constitute[s] a signature within the meaning of the law". The judge answered, "No."

If count two had gone to the jury solely on the theory of aiding in a forged endorsement, the case would present no difficulty. A problem is presented by the other theory of the prosecution, by the initial charge of the judge on that theory, and by the summation of the prosecutor, in accordance with his understanding of the instructions to be given the jury, in which he referred to the filling in the name of the payee as a "forgery".

We do not say it is impossible to sustain the conviction on the basis of the supplemental instruction. But at least there is a "substantial" problem; and there is no need to resolve it. For there is no doubt of the defendant's guilt and conviction under the other two counts on which he was convicted—charging interstate transportation of altered securities, and uttering. As to these, the evidence favorable to the prosecution established his guilt as aider and abettor. Since appellant received concurrent sentences on all counts [21] the Government points out (Br. 28) that in its discretion the court need not consider the merits of the forgery count, but may follow the practice used in *United States v. Gower*, 164 U.S.App.D.C. 98, 101, 503 F.2d 189, 192 (1974). In *Gower*, we applied the *Hooper* doctrine, laid down in *United States v. Hooper*, 139 U.S.App.D.C. 171, 432 F.2d 604 (1970), and applied since then in a variety of circumstances. Essentially, it is a rule of judicial economy, which permits us to vacate conviction on a count that presents legal problems of a not insubstantial nature when there are concurrent sentences that preserve the Government's interest in con-

finement of the malefactor. The court also has discretion to remand for resentencing when it is of the view that elimination of the vacated count is likely to affect disposition on the other counts. That is not obligatory, as appears from *Gower*, and would be inappropriate here. The conviction on count 2 will be vacated.

## IV. ALLEGED IMPROPER ARGUMENT

While the alleged improper argument related to the forgery charge, which is being vacated, appellant argues that it was highly prejudicial and requires a reversal on all counts under the rule of *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). We find no merit in this contention. No objection was made to the argument at the trial, and we cannot find the "substantial prejudice" required for reversal. Clearly there was no evidence of pronounced and persistent misconduct of counsel, as in *Berger*.

## V. CONCLUSION

The conviction on count two will be vacated. The judgment is otherwise affirmed.

---

21. For terms of 20 months to five years for forgery and for uttering, and for a term of five years for interstate transportation of an altered security.