**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Mohammad Reza MEHRMANESH, Patricia Mehrmanesh, and Abofazl Mehrmanesh, Defendants/Appellants.**

**Nos. 80–1512, 80–1544 and 80–1545.**

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 18, 1980.

Decided Sept. 25, 1980.

Opinion Filed Feb. 9, 1981.

Michael L. Piccarreta, Asst. Federal Public Defender, Bruce Feder, Phoenix, Ariz., for defendants/appellants.

Michael D. Hawkins, U. S. Atty., Phoenix, Ariz., for plaintiff/appellee.

Before FLETCHER, ALARCON and CANBY, Circuit Judges.

CANBY, Circuit Judge.

■ This appeal presents a question of interpretation of the provision of the Speedy Trial Act imposing the sanction of dismissal for violation of the Act's time limits. 18 U.S.C. § 3163(c). Before reaching that issue, however, we are presented with a threshold question whether the denial of a motion to dismiss for violation of the Speedy Trial Act is appealable prior to final judgment. We conclude that the order is not appealable, and accordingly dismiss the appeal. We also deny defendants' request for mandamus relief.

*FACTS*:

On March 20, 1980, the defendants were arrested and charged with importing and possessing heroin. A preliminary hearing was held April 10 and probable cause was found. On April 23, the government was granted an additional 30 days to file an indictment. The extended period for filing the indictment based on the March 20 complaint expired on May 19, but the defendants were not indicted until July 9. On July 14, the defendants moved to dismiss the indictments, which they alleged violated the Speedy Trial Act time limits.

The district court denied the motions to dismiss. The court reasoned that although the delay between arrest and indictment exceeded the 30–day period set by the Speedy Trial Act, the statutory sanction of dismissal was not applicable in this case. The statute provides that the sanction of dismissal "shall become effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980." 18 U.S.C. § 3163(c). The district court determined that the dismissal sanction did not apply in this case because the arrest occurred before July 1, 1980. All three defendants appealed this finding. We conclude that we lack jurisdiction of the appeal because it is not from a final judgment and it fails to meet the requirements of a proper interlocutory appeal under *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); 28 U.S.C. § 1291.

*THE INTERLOCUTORY APPEAL*:

■ In our judicial system, interlocutory appeals are not favored. The reasons for this policy have just been thoroughly set forth by this court in *United States v. Garner*, 632 F.2d 758 (9th Cir. 1980). The policy is embodied in 28 U.S.C. § 1291, which grants the federal courts of appeals jurisdiction to review all final decisions of the district courts. Typically, this restricts review to final judgments. There is an exception to this general rule, however, which allows appeals from "collateral orders" which affect rights that are independent of the merits of the action and too important to be denied prompt review. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1959); *Abney v. United States*, 431 U.S. 651, 657–59, 97 S.Ct. 2034, 2039–2040, 52 L.Ed.2d 651 (1977).

■ In *Abney*, the Supreme Court established a three–part test to determine whether an interlocutory appeal should be allowed. An order before final judgment may be appealed if: (1) it completely disposes of the issue in question; (2) it is totally unrelated to the merits of the case; and (3) the right asserted would be irreparably lost if the appeal were delayed until after final judgment. Upon this analysis, the Supreme Court has held that the denial of a pretrial motion to dismiss is appealable when the defense asserted is double jeopardy, *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), or the speech and debate clause of the Constitution, *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979). In *United States v. Griffin*, 617 F.2d 1342 (9th Cir. 1980), this court used the *Abney* analysis to determine that the denial of a motion to dismiss on the grounds of vindictive prosecution was also appealable. In each of these instances the right being enforced was the right to be free of the trial or prosecution itself.

To be contrasted with these cases is *United States v. McDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), in which the Supreme Court held that denial of a

constitutional speedy trial claim was not appealable before final judgment. The Supreme Court determined that because the sixth amendment speedy trial clause is designed to protect the defendant's ability to defend himself at trial, a speedy trial claim fails each part of the *Abney* test.

■ The key to the *McDonald* decision is found in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which established a balancing test to determine whether a defendant's speedy trial right has been violated. The *Barker* Court identified three evils which the sixth amendment speedy trial guarantee prevents: (1) oppressive pre–trial incarceration; (2) anxiety and concern of the accused; and (3) impairment of his or her ability to defend at trial. The *Barker* Court, however, labeled the last interest as the most important. *Id.* at 532, 92 S.Ct. at 2193. The Court said that it is prejudice through a loss of evidence and the disappearance of witnesses because of pretrial delay that the sixth amendment speedy trial guarantee was designed to prevent.

Accepting the *Barker* analysis, the *McDonald* Court found that a pretrial claim based upon the sixth amendment speedy trial clause fails the *Abney* test. The denial of such a claim before trial does not dispose of the issues completely, and is not easily separated from the merits of the case because the extent of the prejudice suffered by the defendant cannot be measured accurately until after trial. Perhaps the most important point in the *McDonald* opinion, however, is that "[i]t is the delay before trial, not the trial itself that offends the constitutional guarantee of a speedy trial." 435 U.S. at 861, 98 S.Ct. at 1553. Proceeding with the trial following denial of a sixth amendment speedy trial claim does not cause or compound the harm suffered by the defendant. Therefore, the right is as easily vindicated after trial as before. In contrast, the evil to be prevented by the double jeopardy and the speech and debate clauses is the trial itself. The sixth amendment speedy trial clause, however, "does not ... encompass a 'right not to be tried'

which must be upheld prior to trial if it is to be enjoyed at all." *Id.*

■ It is true that a claim under the Speedy Trial Act differs in some significant ways from a claim under the sixth amendment speedy trial clause. The Speedy Trial Act was passed at least partly because Congress was dissatisfied with the Supreme Court's decision in *Barker*. Congress recognized that a defendant who must wait long periods to be tried suffers from a "magnitude of disabilities," only one of which is the inability to defend himself at trial. A defendant also suffers from severe emotional and financial strain when forced to undergo a non–speedy trial. H.R.Rep. No. 93–1508, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7401, 7408. *See also United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971) (cited by the House report). Therefore, Congress devised a scheme to circumvent the *Barker* opinion and put teeth into the speedy trial guarantee. The scheme operates like a statute of limitations. The guarantee is violated if the prosecution oversteps the time limits of the act. Under the Speedy Trial Act there is no need to measure prejudice to the defendant.

■ At its simplest, a statutory speedy trial claim produces somewhat different results under the three–part *Abney* test than does the sixth amendment claim, but it nevertheless fails in the end to qualify for an interlocutory appeal. When the Speedy Trial Act claim is based on a purely arithmetical excess over the number of permissible days to indictment or trial, an order denying the claim disposes of the matter completely, and the issue is wholly unrelated to the merits of the case. The first two requirements of *Abney* are therefore satisfied. The third requirement, however, is not. Contrary to the defendants' contention, the right to a dismissal under the Speedy Trial Act does not embody a "right not to be tried" in the unusual sense that the double jeopardy and speech and debate clauses do. It is the delay and not the trial that is the target of the Act. Proceeding with trial does not cause or compound the

harm at which the statute is aimed. Nor does the fact that a dismissal may be with prejudice render its denial appealable. *See United States v. Carnes*, 618 F.2d 68 (9th Cir. 1980) (motion to dismiss or acquit for insufficient evidence); *Smith v. Benedict*, 279 F.2d 211 (7th Cir. 1960) (motion to dismiss claim as time–barred). A defendant's rights under the Speedy Trial Act will not be "irreparably lost" if he or she cannot appeal before trial. Those rights can still be vindicated by appeal after trial or, when an indisputable mathematical error or a truly egregious delay has occurred, by mandamus before trial.

Our conclusion that the denial of a Speedy Trial Act claim is not appealable is reinforced by the anticipation that most such claims will not center on purely arithmetical disputes. They are more likely to deal with the question whether certain blocks of time were properly excluded from calculation of the maximum permissible periods between arrest and indictment or indictment and trial. For example, the Act excludes delays resulting from continuances granted by the trial judge "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). Factors which the judge shall consider in making such a determination include whether the failure to grant a continuance would be likely to "result in a miscarriage of justice" or would deny counsel the time for adequate or effective preparation for trial. 18 U.S.C. § 3161(h)(8)(B)(i), (ii) and (iv). These are delicate and discretionary determinations that depend largely on the anticipated character of the trial. To the extent that they form the basis for denial of a pre–trial motion to dismiss, the denial neither disposes of the matter completely nor is totally unrelated to the merits of the case. In that event, none of the three requirements of *Abney* is met. Interlocutory appeals of such cases would call for appellate review upon unnecessarily incomplete facts and would simply add to the problem of pre–trial delay. They are quite properly outside of our jurisdiction.

*THE PETITION FOR MANDAMUS*:

The defendants have asked alternatively for mandamus relief from the district court's order. Mandamus under 28 U.S.C. § 1651 is an appropriate remedy only in extraordinary circumstances. *Allied Chemical Corp. v. Daiflon, Inc.*, —— U.S. ——, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967); *Bauman v. United States District Court*, 557 F.2d 650, 654 (9th Cir. 1977). This court has stated that mandamus is appropriate only when the district court has made a clear and indisputable mistake. *Arthur Young & Co. v. United States District Court*, 549 F.2d 686, 691 (9th Cir. 1977). That standard would be met if the trial judge had simply miscounted the number of days permitted under the Speedy Trial Act. Nothing of the sort occurred here.

The court below interpreted the Act to mean that the sanctions for exceeding the permissible time between arrest and indictment were not applicable when the arrests occurred before July 1, 1980, as they did in this case. The wording of the Act may be subject to another interpretation, but we cannot say that the district court's reading was an unreasonable one. The court had no precedent to guide it, and its reading is supported by the Judicial Conference of the United States. Committee on the Administration of the Criminal Law, Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974 66–67 (Dec. 1979 version). Even if the trial court made an error of law—a question we do not reach— that fact itself does not render its decision subject to correction by mandamus, for "then every interlocutory order which is wrong might be reviewed under the All Writs Act." *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953); *Will v. United States*, 389 U.S. 90, 98 n.6, 88 S.Ct. 269, 275 n.6, 19 L.Ed.2d 305 (1967); *Bauman v. United States District Court*, 557 F.2d 650, 659– 60 (9th Cir. 1977). The question decided

below was a close one. Whether or not the district court's interpretation is ultimately upheld on appeal after final judgment, we cannot now find it to be "clearly erroneous as a matter of law as that term is used in mandamus analysis." *Bauman v. United States District Court*, 557 F.2d at 660. The writ is accordingly denied.

*CONCLUSION*:

■ In closing, we note that the motion to dismiss and the arguments in this case were directed solely to the sanctions imposed by the Speedy Trial Act, 18 U.S.C. §§ 3162 and 3163. The district court also has discretionary power, apart from those provisions, to dismiss an indictment on grounds of delay. Fed.R.Crim.P. 48(b). *See United States v. Carpenter*, 542 F.2d 1132, 1134 n.2 (9th Cir. 1976); *United States v. Peters*, 587 F.2d 1267, 1270 n.6 (D.C.Cir. 1978). Our decision in this case is without prejudice to the district court's entertaining motions addressed to that discretionary power.

Appeals dismissed.

Petitions for writs of mandamus denied.

FLETCHER, Circuit Judge, dissenting:

I respectfully dissent. I would hold that the order denying the motion to dismiss is appealable and, reaching the merits, I would reverse the order. Alternatively, I would grant a writ of mandamus compelling the trial judge to dismiss the indictments.

## I

## INTERLOCUTORY APPEAL

The majority correctly concludes that it should apply the three-part test set forth in *Abney v. United States*, 431 U.S. 651, 658–59, 97 S.Ct. 2034, 2039–2040, 52 L.Ed.2d 651 (1977), to determine whether an interlocutory appeal will lie. My quarrel is with the majority's application of the test.

The first *Abney* criterion is that the challenged order be a "complete, formal, and, in the trial court, final rejection" of the defendants' claim. *Id.* at 659, 97 S.Ct. at 2040.

It cannot leave the matter "open, unfinished, or inconclusive." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). The Supreme Court in *United States v. MacDonald*, 435 U.S. 850, 858–59, 98 S.Ct. 1547, 1551–1552, 56 L.Ed.2d 18 (1978), held that the denial of a constitutional speedy trial claim is not such an order because

> [b]efore trial ... an estimate of the degree to which delay has impaired an adequate defense tends to be speculative. The denial of a pretrial motion to dismiss an indictment on speedy trial grounds does not indicate that a like motion made after trial—when prejudice can be better gauged—would also be denied.

A speedy trial claim based on the statute stands on different footing. As the majority recognizes, there is no need, in fact no opportunity, to measure prejudice to the defendants. If the indictment is not filed or the trial not commenced within the time limits provided, a violation has occurred. 18 U.S.C. §§ 3161–62 (1976 & Supp. III 1979). The only determination the judge need make is whether the statutory limits were exceeded.

The majority argues that a delay based on § 3161(h)(8)(A) of the Act is an example of a decision that would not be final before trial. That section permits the trial judge to grant a continuance "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A) (1976). If the judge grants such a continuance, he must set forth in the record his reasons for doing so. *Id.* If there are no reasons or if they are inadequate, the period of delay is not excludable time. Nowhere in the Act is the trial court permitted, after trial, to weigh delays against the effects of those delays.

There is simply no basis on which one could conclude that the denial of a Speedy Trial Act claim is anything less than final at the time it is made. No events at trial can convert excludable delay into nonex-

cludable delay or vice versa. As we stated in *United States v. Griffin*, 617 F.2d 1342, 1345 (9th Cir. 1980), in relation to a vindictive prosecution claim, "all the facts relevant to the . . . claim will be apparent and known to the parties prior to trial. No further purpose can be served by postponing a determination of the issue."

The second element of the *Abney* test requires that the decision not be "simply a 'step toward final disposition of the merits of the case [that would] be merged in final judgment.'" 431 U.S. at 658, 97 S.Ct. at 2039, *quoting Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. at 546, 69 S.Ct. at 1226. The Supreme Court in *MacDonald* held that a constitutional speedy trial claim is not independent of the merits because "[t]he claim would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof." 435 U.S. at 859, 98 S.Ct. at 1552. This is so because the crucial factor in a sixth amendment speedy trial claim is the existence of prejudice.

In contrast, a Speedy Trial Act claim is neither measured by prejudice to the defendant or any other event at trial, nor is it "largely satisfied" by acquittal. A defendant under the Speedy Trial Act is entitled to more than freedom from prejudice; he or she is entitled to an immediate dismissal if the indictment is late filed or the trial tardily commenced. 18 U.S.C. § 3162 (1976). The focus of the Act, as discussed below, is on delay itself, not on prejudice. Additional delay and the trial, itself, would compound the harm to the defendant and to the public. The appeal therefore satisfies the second *Abney* criterion.

The third *Abney* requirement is that the right asserted be one that will be "lost, probably irreparably" if review must await final judgment. *Abney v. United States*, 431 U.S. at 658, 97 S.Ct. at 2039, *quoting Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. at 546, 69 S.Ct. at 1225. The Supreme Court in *MacDonald*, focusing on the prejudice to a defendant's ability to defend himself, saw only "superficial attraction in the argument that the [constitutional] right to a speedy trial . . . must be vindicated before trial in order to insure that no nonspeedy trial is ever held." 435 U.S. at 860–61, 98 S.Ct. at 1552–1553. In the Speedy Trial Act, however, Congress addressed delay as a problem in itself: it sought to insure that there would be no nonspeedy trials.[1] This purpose makes the *MacDonald* rationale inapt.

---

1. The House Report on the Act notes that the decisions of the Supreme Court on the sixth amendment right to a speedy trial fail to provide any guidance as to the length of delay that will be tolerated, because the test turns on prejudice to the defendant and can only be applied after trial:

> It provides no guidance to either the defendant or the criminal justice system. It is, in effect, a neutral test which reinforces the legitimacy of delay.

H.R.Rep.No.93–1508, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7401, 7405. The report also recognizes that prejudice to the defendant is only one kind of harm that is caused by delayed trials:

> [T]he denial of a speedy trial may result in loss of employment or make it impossible to find work; restraints are placed on the accused's liberty, and he may be forced to live under a cloud of anxiety, suspicion, and hostility. The defendant's resources may be drained and his associations curtailed; and he may be subjected to public obloquy, which creates anxiety in his family, friends and the defendant himself.

*Id.* at 7408. Defendants in custody suffer correspondingly greater disabilities. *Id.*

The House Committee was also concerned with the detrimental effects delayed criminal trials have on the public interest. It noted particularly the increased probability that a defendant released on bail will commit further crimes if the trial is delayed more than sixty days. *Id.* at 7407, 7408–09. The Committee also considered the financial and administrative burden placed on taxpayers by lengthy delays in trying accused criminals. *Id.* at 7408–09.

On the basis of these considerations Congress determined that strict limits should be placed on pretrial delay to insure, in effect, that "no nonspeedy trial is ever held." The Committee report quoted with approval the remarks of Assistant Attorney General (now Justice) Rehnquist:

> [I]t may well be . . . that the whole system of Federal justice needs to be shaken by the scruff of its neck, and brought up short with a relatively peremptory instruction to prosecutors, defense counsel and judges alike that criminal cases must be tried within a particular period of time.

*Id.* at 7414.

The rights conferred by Congress in the Speedy Trial Act, unlike rights under the sixth amendment guarantee, are of a sort that must be vindicated prior to trial if they are to have any meaning, either to defendants or to the public. If denial of a Speedy Trial Act claim may only be reviewed on appeal from a conviction, then a remedy is not available to those who are ultimately acquitted (but who nonetheless suffer all of the disadvantages which concerned Congress), nor to those who, perhaps worn down by a lengthy pretrial delay, ultimately plead guilty. Such a procedure would "reinforce the legitimacy of delay." H.R.Rep. No.93–1508, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7401, 7405. Finally, the claim, if upheld on appeal from a conviction, would probably result in dismissal of the charges against the defendant with prejudice,[2] making the trial a fruitless exercise. If dismissal without prejudice is permitted, then the defendant has achieved nothing but the privilege of being tried a second time. This hardly compensates for the impermissible delay of the first trial.

The conclusion seems inescapable that interlocutory appeals are appropriate in Speedy Trial Act cases. The instant case is illustrative. In this case, no one denies that the Act was violated. At least sixty-four nonexcludable days passed between arrest and indictment, while thirty days is the maximum permitted by the Act. 18 U.S.C. § 3161(b) (1976). The only dispute is whether the dismissal sanction applies. Our ability to decide this question will not be improved by the development of facts at trial. On the other hand, the trial will seriously burden these defendants who, if their contentions are correct, have a right to an immediate dismissal. They are entitled to a determination before trial of the question they have presented.

## II

## MANDAMUS

If appeal does not lie, then mandamus should issue directing the district court to dismiss the indictment because it was not filed within the time limits of the Speedy Trial Act.

The only question we must consider is whether the dismissal sanctions of the Act apply to this case, or only to cases in which the arrest occurred after July 1, 1980. 18 U.S.C. § 3163(c) (Supp. III 1979). By denying the writ, the court does not reach that question. As I understand the majority's reasoning, the writ is denied because the answer to the question is not clear.

Apparently following a cryptic statement in *Bauman v. District Court*, 557 F.2d 650, 660 (9th Cir. 1977), the majority holds that if the district court is faced with a confusing question of pure law, its resolution of that question cannot be "clearly erroneous." This misconstrues the concept of clear error in mandamus law.

The Supreme Court's recent decision in *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) made it abundantly clear, if it was not already, that mandamus is generally not available to correct the erroneous discretionary decisions of the district courts. This is because the error, if made, is rarely "clear and indisputable" if the decision is discretionary. *Id.* There is no discretion involved in the decision challenged here. If we decide that the district court was wrong in its reading of 18 U.S.C. § 3163(c), appellants' right to relief *will* be "clear and indisputable." The district court will have no choice but to dismiss. 18 U.S.C. § 3162(a)(1) (1976). As the District of Columbia Circuit aptly stated, "[t]he fact that the error . . . was not apparent until after the [appellate] court decided the principal case is no reason for refusing to decide the issue." *Colonial*

2. The legislative history of the Act makes it clear that dismissal with prejudice was intended to be the preferred remedy. The House version of the bill would have required dismissal with prejudice in all cases in which the time limits were not met. H.R.Rep.No.93–1508, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 7401, 7403. The Senate version would have permitted reprosecution in exceptional circumstances. *Id.* The House noted this difference, and recommended a bar to reprosecution in all cases. *Id.* at 7416. The bill, however, was amended on the floor of the House to permit dismissal without prejudice based on a consideration of specified factors. 120 Cong.Rec. 41793–96 (1974).

*Times, Inc. v. Gasch*, 509 F.2d 517, 524 (D.C.Cir.1975). Indeed, the final guideline in *Bauman* for the appropriateness of mandamus is that "[t]he district court's order raises new and important problems, or issues of law of first impression." *Bauman v. District Court*, 557 F.2d at 655.[3]

## III

## CONSTRUCTION OF 18 U.S.C. § 3163(c)

The disputed provision reads as follows:

(c) Subject to the provisions of section 3174(c), section 3162 of this chapter [sanctions] shall become effective and apply to all cases commenced by arrest or summons, and all informations or indictments filed, on or after July 1, 1980.

18 U.S.C. § 3163(c). The government asserts that the sanctions apply to late indictments if the *arrest* occurred after July 1, 1980, and to late trials if the *indictment* occurred after July 1, 1980.[4] This reading is perhaps possible if the section is read alone, but an examination of the Act's structure and legislative history compels a different interpretation.

The original version of section 3163(c) reads as follows:

(c) Section 3162 of this chapter [sanctions] shall become effective after the date of expiration of the fourth twelve-calendar-month period following July 1, 1975.

Speedy Trial Act of 1974, Pub.L.No.93–619, § 3163(c), 88 Stat. 2081 (1974). It made no distinctions among proceedings in various stages.[5] The sanctions simply became operative five years after the Act became effective. The time limits (arrest to indictment;

indictment to trial), lenient at the beginning, were progressively shortened during the Act's five-year phase-in period. The time limits began to run on July 1, 1976 even as to proceedings initiated before that date, so that by 1979 when the sanctions became effective all parties would be aware of the limits and sanctions. The Act thus provided a substantial period during which the federal criminal justice system could accommodate itself to the new regime.

In 1979, Congress decided to defer the imposition of sanctions until July 1, 1980. Speedy Trial Act Amendments of 1979, Pub.L.No.96–43, 93 Stat. 327 (1979). This was done to give district courts and prosecutors a full year of experience under the shortest time limits before the sanctions became mandatory. H.R.Rep.No.96–390, 96th Cong., 1st Sess. (1979), *reprinted in* [1979] U.S.Code Cong. & Ad.News 805, 812. The amendments passed in 1979 contained the current language of section 3163(c). The House Report gives the following explanation of that provision:

Section 6 would amend section 3163(c) to defer the dismissal sanction of section 3162 until July 1, 1980 and to specify that ... the dismissal sanction shall, beginning July 1, 1980, apply only to cases commenced by arrest or summons and *to indictments* or informations *filed on or after that date.*

*Id.* at 816 (emphasis added). The implication of this language is that all late indictments filed after July 1 are subject to dismissal. After July 1, the only cases in which violations would clearly not be subject to sanctions would be those in which the trial was late, but the indictment was

---

3. If this case is not appealable, the other *Bauman* guidelines indicate the appropriateness of mandamus relief as well. For the reasons set forth in section I, *supra*, the petitioners have no other adequate means of attaining the relief they desire, and they will be damaged in a way not correctable on appeal from a conviction. *Bauman v. District Court*, 557 F.2d at 654–55. The remaining guideline, which suggests that mandamus is appropriate if the error is oft-repeated, is not relevant here. *Id.* at 655.

4. The Act provides for a maximum of thirty nonexcludable days between arrest and indictment, 18 U.S.C. § 3161(b), and for a maximum

of seventy nonexcludable days between indictment and trial. 18 U.S.C. § 3161(c)(1). A violation of either time limit may result in dismissal. 18 U.S.C. § 3162(a)(1) & (2).

5. This is even more significant in view of the fact that distinctions were and are made among the various stages of a proceeding for the purpose of determining when the applicable time limit began to run. 18 U.S.C. § 3163(a) & (b). When Congress wished to draw such distinctions, it was capable of doing so with some clarity.

filed before July 1. In the instant case, the indictment was filed on July 9, 1980. In my view, the statute requires its dismissal.

The government finds support for its reading of the statute in the guidelines promulgated by the Judicial Conference. Committee on the Administration of the Criminal Law, Judicial Conference of the United States, *Guidelines to the Administration of the Speedy Trial Act of 1974* at 66–67 (Dec. 1979 version). However, those guidelines are not intended to be binding and cannot be used to controvert the legislative history. *Id.* at i.[6]

Reading the Act to apply the sanctions to all indictments filed after July 1 does not subvert any of its purposes, but rather furthers them. The government knew of the time limits far in advance of this proceeding. It has offered no excuse for its gross failure to comply.

I think the error of the district court in denying defendants' motion to dismiss is clear and mandamus should issue if this court will not entertain the appeal.

---

**6.** The trial judge was under the impression that the Guidelines represent the interpretation of the committee that drafted the Act. He apparently regarded the Judicial Conference's position as a binding interpretation. This of course is incorrect and provides additional grounds for not deferring to the trial judge's interpretation.