**UNITED STATES of America, Appellee,**

v.

**Roy Dalton GARNER, Appellant.**

**No. 79–1802.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 1980.

Decided Oct. 6, 1980.

Rehearing Denied Nov. 19, 1980.

Burton Marks, Los Angeles, Cal., for appellant.

Samuel Coon, Asst. U. S. Atty., Reno, Nev., for appellee.

Before KILKENNY and FARRIS, Circuit Judges, and BELLONI, District Judge.*

KILKENNY, Circuit Judge:

Appellant appeals from an order denying his motion to dismiss a seven count federal grand jury indictment charging him with: (1) violations of 18 U.S.C. § 1343 [fraud by wire]; (2) violations of 18 U.S.C. § 1952(a)(3) [interstate travel in aid of racketeering enterprise and use of interstate facility in the aid of a racketeering enterprise].

Appellant filed motions to dismiss the indictment on three grounds: (a) the indictment violated Garner's right to be free from double jeopardy; (b) the indictment violated the Department of Justice's policy recognized in *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960); and (c) there were irregularities in the grand jury proceedings.

Briefly summarized the issues as outlined in the various counts of the indictment are: (1) Count I charges appellant and his accomplices with implementing a marked card system to defraud Harrah's Casino of substantial sums of money, of transporting that money across state lines, and using the telephone to make a call between Reno, Nevada, and Oxnard, California, in aid of the scheme, all in violation of the provisions of 18 U.S.C. §§ 1342 and 1343; (2) Counts II, IV and VI charge appellant and his accomplices with traveling and causing travel in interstate commerce on three occasions to carry on a business activity unlawful under Nevada law and in violation of 18 U.S.C. §§ 1952(a)(2) and (3); (3) Counts III and V charge appellant with using the telephone to make interstate calls in aid of

---

\* The Honorable Robert C. Belloni, United States District Judge for the District of Oregon, sitting by designation.

racketeering in violation of §§ 1952(a)(2) and (3), and Count VII charges that one of appellant's accomplices transported stolen money in interstate commerce in violation of 18 U.S.C. § 2314.

## ISSUES

(1) Were the denials of the pretrial motions appealable orders?

(2) Should the indictment be dismissed on double jeopardy grounds?

(3) Whether the policy announced in *Petite v. United States, supra,* requires a dismissal of the indictment.

(4) Whether the district court erred in not ordering disclosure of certain grand jury materials.

## DOUBLE JEOPARDY CLAIM

Inasmuch as appellant has not been tried, our initial question is whether the denials of his pretrial motions are appealable orders. Generally speaking, such denials are not final judgments which are appealable. *United States v. Griffin,* 617 F.2d 1342 (CA9 1980). However, when a claim of double jeopardy is made in a pretrial motion to dismiss, the denial thereof is appealable. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *United States v. Solano,* 605 F.2d 1141 (CA9 1979). Consequently, we are in a position to respond to appellant's double jeopardy claim. The claim, in our opinion, is without merit.

To support this claim, the appellant relies on an earlier trial and conviction in violation of 18 U.S.C. § 1343 [wire fraud]. He had used what is known to the trade as a "blue box" to enable him to place undetected long distance telephone calls which defrauded the Nevada Bell Telephone Company. Appellant argues that because his use of the telephone on two occasions in aid of the scheme to defraud Harrah's, which is the basis of Counts III and V of the indictment, also served to support his earlier "blue box" conviction, his constitutional right not to be subject to double jeopardy was violated. We disagree. His earlier conviction was for defrauding the telephone company. Here he is charged with an entirely different offense, using the telephone in aid of the racketeering scheme. Although both offenses undeniably involved common facts—the use of the telephone—the appellant has not thereby established that the rights conferred upon him by the double jeopardy clause have been violated.

In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court stated that "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Surely this does not mean that whenever there exist any common facts between the facts supporting an earlier conviction and those which form the basis for a subsequent prosecution the second prosecution is barred by the double jeopardy clause. *See also, United States v. Rone,* 598 F.2d 564 (CA9 1979).

Under Counts III and V, brought under § 1952(a)(3), the government must prove the use of the telephone with the intent to aid an unlawful activity. The unlawful activity involved herein is a business enterprise involving gambling—*i. e.,* the scheme to defraud Harrah's Casino. Under § 1952(a)(3) the government must clearly prove facts that were unnecessary to support the earlier conviction. Under the earlier § 1343 charge the government was required to prove the use of the telephone to aid a scheme to defraud the telephone company. The use of the telephone for that purpose was not necessary to sustain the § 1952(a)(3) conviction. We conclude that there is no merit to appellant's double jeopardy claim.

## JUSTICE DEPARTMENT POLICY

Appellant argues that he is entitled to the protection of the Justice Department's policy recognized in *Petite.* In *Petite,* the Supreme Court, at the request of The Solicitor General, remanded a case to the district

court with instructions to dismiss the indictment on the ground that it was the policy of the Justice Department not to prosecute a federal case where there has been a state prosecution for substantially the same act or acts unless, for compelling federal interest, The Attorney General recommends prosecution. In the instant case, appellant had been indicted in a Nevada state court for card cheating in violation of a Nevada statute. This indictment was later dismissed. Appellant argues that *Petite* requires the dismissal of the present prosecution.

■ Appellant's argument must be rejected. We have said that "Such arguments are not properly the subject of an *Abney* appeal. Even if the issue were before us, this court has held that a violation of the *Petite* policy does not compel the dismissal of a federal prosecution." *United States v. Solano*, 605 F.2d 1141, 1143 (CA9 1979).

## ALLEGED GRAND JURY IRREGULARITIES

In his motion to dismiss the indictment on account of the grand jury irregularities, the appellant requested an order: (1) compelling disclosure of the sessions of the grand jury held to consider evidence leading to the indictment returned on April 26, 1979; (2) disclosure of the attendance of the grand jurors at each of the sessions; (3) upon such disclosure to dismiss the indictment upon the ground that it was returned by grand jurors who did not hear, evaluate, or deliberate upon the evidence presented to the grand jury; and (4) upon the further ground that the purpose of the grand jury as envisioned by the Fifth Amendment was defeated by the procedures utilized by the government in obtaining the indictment.

Appellant specifically complains that the jurors who indicted him did not hear the evidence. He claims that one grand jury heard the evidence and did not return a true bill and that there are indications in disclosures made by the government that a major portion of the testimony heard by the indicting grand jury was simply a recapitulation of the case presented to the first grand jury. Additionally, appellant asserts that the summary was submitted by a law enforcement agent who had inherited the case upon the retirement of another agent.

As a threshold matter we must consider whether the order denying appellant's motion to dismiss the indictment because of grand jury irregularities is appealable. Our jurisdiction is wholly statutory and so we must determine whether the order falls within the terms of the applicable statute—in this case 28 U.S.C. § 1291.

Section 1291 provides that "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States.". A final decision has long been regarded as a predicate to federal appellate jurisdiction. The finality requirement reflects the congressional policy to avoid the threats to efficient judicial administration incident to interlocutory or "piecemeal" appeals. And "[a]dherence to this rule of finality has been particularly stringent in criminal prosecutions because 'the delays and disruptions attendant upon intermediate appeal,' which the rule is designed to avoid, 'are especially inimical to the efficient and fair administration of the criminal law.' *DiBella v. United States, supra*, 369 U.S. 121 at 126, 82 S.Ct. 654 at 657." *Abney v. United States*, 431 U.S. 651, 657, 97 S.Ct. 2034, 2039, 52 L.Ed.2d 651 (1977).

The ease with which the finality rule is stated, however, belies the difficulty of its application. The Supreme Court has noted that "[n]o verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). Indeed, the Court's efforts to give the rule a "practical rather than a technical construction", *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949), have on occasion led to some rather curious results. *See e. g., Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).

Generally § 1291 requires that an order, to be appealable, must terminate the proceedings in the district court. Certain orders, however, which do not constitute final judgments fall within the "collateral order" exception articulated in *Cohen* and are, therefore, "final decisions" within § 1291.

*Cohen* was a stockholder's derivative action brought in a federal district court in New Jersey. Federal jurisdiction was premised upon diversity of citizenship. The defendant made a motion to require the plaintiff to post security for reasonable expenses incurred by the defense as was required by a newly enacted New Jersey statute. The district court determined that the state statute did not apply in the federal action and denied the motion. The court of appeals reversed and ordered the posting of security. The Supreme Court concluded that the court of appeals had properly assumed jurisdiction and affirmed on the merits.

Mr. Justice Jackson based the determination of appealability on several factors. First, the district court's order was a final disposition of the particular issue involved. It was not "tentative, informal or incomplete," in any sense. 337 U.S. at 546, 69 S.Ct. at 1225. Second, the issue was not simply a "step toward final disposition of the merits of the case." *Id.* And finally, review after final judgment would be ineffective because at that point the "rights conferred by the statute, if it [was] applicable, [would] have been lost, probably irreparably." *Id.* The statute was intended to prevent "strike suits" by requiring security for payment of reasonable expenses if the action was adjudged to be unsustainable. The protection this statute afforded would have been lost if the defendant was required to proceed to trial without such assurances. Finally, the Court noted that the issue involved was a "serious and unsettled question." *Id.* at 547, 69 S.Ct. at 1226.

The Court concluded that "[t]his decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225.

More recently, in *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Court considered whether a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds satisfied the *Cohen* requirements. The Court, per Mr. Chief Justice Burger, concluded that such an order was indeed a "collateral order" within the "small class of cases" that are exceptions to the final judgment rule. First, an order denying a motion to dismiss on double jeopardy grounds is a complete and final rejection, in the trial court, of a defendant's double jeopardy claim. Second, a double jeopardy claim "is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i. e.*, whether or not the accused is guilty of the offense charged." *Id.* at 659, 97 S.Ct. at 2040. Finally, the Court stated that "the rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence." *Id.* at 660, 97 S.Ct. at 2040. The double jeopardy clause is, in part, a guarantee against being put to trial twice for the same offense and this would be lost if a criminal defendant was forced to endure trial prior to appellate review.

The substantive double jeopardy claim presented in *Abney*, unlike the issue involved in *Cohen*, was not a serious and unsettled question.[1] The Court determined,

---

1. Some courts have emphasized the requirement that the issue involved be a serious and unsettled question. In *Weight Watchers v. Weight Watchers International, Inc.*, 455 F.2d 770, 773 (CA2 1972), the Second Circuit said that "[a]nother important factor bearing on the application of the *Cohen* doctrine, . . . , is whether a decision will settle a point once and for all, as it did in the *Cohen* case, or will open the way for a flood of appeals concerning the propriety of a district court's ruling on the facts of a particular suit." The Second Circuit has

however, that "the special considerations permeating", *id.* at 663, 97 S.Ct. at 2042, double jeopardy claims justified including another class of cases within the "small class of cases" that satisfy the "collateral order" exception. The Court acknowledged that "our holding may encourage some defendants to engage in dilatory appeals . . . . However, we believe that such problems of delay can be obviated by rules or policies giving such appeals expedited treatment. It is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims of former jeopardy." *Id.* at 662 n. 8, 97 S.Ct. at 2042 n. 8.[2]

Perhaps not surprisingly, the short period since the Supreme Court's decision in *Abney* has been marked by an increasingly large number of claims that various pretrial orders are immediately appealable as "collateral orders." The Supreme Court, in *United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) rejected an assertion that a pretrial order denying a defendant's motion to dismiss an indictment because of an alleged violation of his Sixth Amendment right to a speedy trial was a "final decision." After reemphasizing the importance of finality to judicial administration, especially in the criminal context, the Court proceeded to apply the criteria enunciated in *Cohen* and *Abney*.

First, the Court noted that the denial of a motion to dismiss on speedy trial grounds does not represent a complete and final rejection, in the trial court, of the defendant's claim. "The resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case. As is reflected in the decisions of this Court, most speedy trial claims, therefore, are best considered after the relevant facts have been developed at trial." *Id.* at 858, 98 S.Ct. at 1551. A defendant would have the opportunity to make a similar motion after trial—when prejudice could be better evaluated.

Second, the rejection of a speedy trial claim is not "collateral" to the principal issues at trial. The determination of a speedy trial claim is not independent of the outcome at trial—particularly since the question of prejudice to the defense is central to an analysis of a speedy trial claim.

Third, the right involved in *MacDonald* was unlike the rights asserted in *Cohen* and *Abney* in that its "legal and practical value . . . would [not] be destroyed if it were not vindicated before trial." *Id.* at 860, 98 S.Ct. at 1552. The Court recognized that there was a "superficial attraction" to the contention that the right to a speedy trial involved a right not to be subject to a nonspeedy trial. However, "[u]nlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a 'right not to be tried' which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial." *Id.* at 861, 98 S.Ct. at 1553.

The Court asserted that the application of the *Cohen* and *Abney* analysis resolved the appealability issue. It then mentioned several policy considerations which "reinforced" its conclusion. Among these considerations was the fact that because there would inevitably be some delay between indictment and trial every defendant could make a pretrial motion for dismissal on speedy trial grounds, the denial of which would be immediately appealable. Unlike a double jeopardy claim, which requires at

---

recently debated the question of whether *Cohen* requires that a "collateral order" involve a serious and unsettled question. *Compare Armstrong v. McAlpin*, 625 F.2d 433, 438–439 and n. 11 (CA2 1980) *with* 448–451 (Mulligan, J., concurring in part and dissenting in part).

**2.** It should be noted that the *Abney* court expressly precluded the possibility of a court of

appeals exercising pendent appellate jurisdiction. Each claim in a motion to dismiss must be treated separately. A claim is not appealable because brought in conjunction with a double jeopardy claim. Each claim, in order to be immediately appealable, must independently satisfy the "collateral order" exception.

least a colorable showing of former jeopardy "there is nothing about the circumstances that will support a speedy trial claim which inherently limits the availability of the claim." *Id.* at 862, 98 S.Ct. at 1553. The Court concluded its analysis by saying that "we decline to exacerbate pretrial delay by intruding upon accepted principles of finality to allow a defendant whose speedy trial motion has been denied before trial to obtain interlocutory appellate review." *Id.* at 863, 98 S.Ct. at 1554.

In *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979), the Court again considered the scope of the "collateral order" exception, this time in the context of the speech or debate clause. Helstoski, a United States Congressman from New Jersey, had moved to dismiss an indictment on the ground that the indictment violated the speech or debate clause. This motion was denied. Helstoski petitioned the Third Circuit for a writ of mandamus directing the district court to dismiss the indictment. The court declined to issue the writ, holding that the indictment did not violate the speech or debate clause. The Supreme Court determined that mandamus was not the appropriate remedy because review had been available by direct appeal.

The Court found that the district court order rejecting the speech or debate clause claim was a "collateral order." The denial of the motion to dismiss was a final disposition, in the trial court, of that particular claim. Second, the speech or debate clause contention was wholly collateral to the merits of the charge against Helstoski. And because "the Speech or Debate Clause was designed to protect Congressmen 'not only from the consequences of litigation's results but also from the burden of defending themselves.' ", *id.* at 508, 99 S.Ct. at 2449, this right would be lost if Helstoski was exposed to prosecution prior to appellate review.

This court has recently held that the denial of a motion to dismiss an indictment on grounds of vindictive prosecution is an appealable order. *United States v. Griffin*, 617 F.2d 1342 (CA9 1980). *Griffin* involved

a straightforward application of the *Cohen* criteria. Most importantly, we found that "a vindictive prosecution claim, like the *Abney* double jeopardy claim, involves a right to be free from prosecution itself, rather than merely the right to be free from a subsequent conviction. Thus, the vindictive prosecution doctrine is a limit on prosecutorial discretion, and goes to the very authority of the prosecution to hale the defendant into court in the first place." *Id.* at 1345–6.

In *In re Fendler*, 597 F.2d 1314 (CA9 1979), we considered whether an order denying a petition to conduct a *voir dire* of the grand jurors investigating appellant concerning their possible bias, prejudice or economic interest was appealable. We concluded that such an order was not appealable. In *Fendler* an indictment had yet to be returned and the instant case might appear to be distinguishable on that ground. However, the court indicated that such facts would not be a controlling factor on the question of appealability. We said "[t]here is no reason to depart from the policy against piecemeal appeals in this case. If and when an indictment is returned against appellant, he can raise his claims in a motion to dismiss the indictment, 28 U.S.C. § 1867(e) and Fed.R.Crim.P. 6(b)(2); *and since denial of such a motion is reviewable on direct appeal from a criminal conviction, denial of review now will not render review impossible.*" *Id.* at 1315 [Emphasis added]. Although this statement is not binding in this instance we believe that it cautions against an overbroad reading of *Cohen* and *Abney.*

■ In the instant case appellant contends that the order denying his motion to dismiss the indictment because of grand jury irregularities is appealable. Since the order is not "final" as that term is ordinarily construed appellant maintains that it is within the "small class of cases" that qualifies as a "collateral order." We note at the outset that the particular issue here in question is not appealable simply because brought together with the admittedly appealable double jeopardy claim. In light of *Abney*'s rejection of the concept of pendent

appellate jurisdiction we refuse to follow appellant's suggestion that we resolve all the issues presently before us simply because of the existence of the double jeopardy claim.

Appellant claims that the order herein involved satisfies the principles the Supreme Court articulated in *Cohen* and *Abney*. The district court's order was a complete and final determination of appellant's claim. And the issue involved is collateral to, and separate from, the principal issue at trial, *i. e.*, the guilt or innocence of the appellant. The question remains, however, whether the particular right involved would be "lost, probably irreparably" if immediate appellate review is not available.

The Fifth Amendment provides, in part, that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," U.S.Const. amend. V. The Supreme Court has said that "[t]he very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960).

> " '[T]he institution [grand jury] was adopted in this country, and is continued from considerations similar to those which give it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offences upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity. No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than sixteen nor more than twenty–three good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial.' "

*Ex parte Bain*, 121 U.S. 1, 11, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1886).

The right to an indictment by a grand jury is, therefore, intended to insure that one is not "held to answer" for an infamous crime unless an independent body standing between the prosecutor and the accused has determined that the accused should be required to do so. Here, appellant was indicted by a grand jury and so we are not required to address the appealability of an order denying a motion to dismiss on the grounds that an indictment allegedly required by the Fifth Amendment was wholly absent.

Appellant argues that because of alleged irregularities the purposes of the grand jury were not served. Appellant maintains that he has a right not to be prosecuted, not to be "held to answer," unless the grand jury proceedings were properly conducted. Otherwise, the grand jury will not have served its intended purpose of standing as a buffer between the accuser and the accused. Appellant is not asserting a right to be free from subsequent conviction because even if there was a dismissal there could be a reindictment. Appellant is asserting a right to be free from this prosecution because of the alleged grand jury irregularities. He asserts that later review would be meaningless because at that point he will have been forced to endure trial without the assurance that the grand jury had effectively served its intended purpose. The right not to stand trial unless indicted by a properly functioning grand jury will have been irreparably lost.

█ We admit the argument appellant advances has a "superficial attractiveness." We hold, however, that the order denying the motion to dismiss the indictment because of grand jury irregularities is not immediately appealable. Our conclusion is premised primarily upon pragmatic considerations. The "collateral order" exception should be narrowly construed so that the exception does not swallow the finality rule. Although one may dispute the wisdom of the finality rule Congress had determined

that, in most instances, a "final decision" is a predicate to the exercise of federal appellate jurisdiction. We are convinced that, especially in the criminal context, the policy against piecemeal appellate adjudication is sound and that the exceptions to the rule should be few. To allow an interlocutory appeal in this instance would create nothing short of chaos in the criminal justice system. We decline appellant's invitation to include this class of case within the "small class of cases" that satisfy the "collateral order" exception.

To hold the order here in question appealable would open the possibility for a pre-trial appeal in nearly every criminal case. A claim like the one appellant is making–that the evidence before the grand jury was not adequate and competent, i. e. that it was hearsay evidence–would be available in nearly every instance.

In *Costello v. United States*, 350 U.S. 359, 363–4, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956), the Court rejected such claims and there said:

> "[p]etitioner urges that this Court should exercise its powers to supervise the administration of justice in the federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial."

Recently the Third Circuit in *In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033 (CA 3 1980), rejected a contention that the denial of a motion for an evidentiary hearing to learn who had divulged information to the news media in order to have them disqualified from participating in grand jury proceedings was an appealable order. The court said that "flawed grand jury proceedings can be effectively reviewed by this court and remedied after a conviction had been entered and all criminal proceedings have been terminated in the district court. [Citing *Costello*] . . . Because delayed appellate review will not irreparably deny Johanson his right to an impartial grand jury, (his conviction could be reversed if at a later stage we conclude the grand jury was tainted) the order is not reviewable immediately as a collateral order." *Id.* at 1039.

Mr. Justice Blackmun's observations in *MacDonald, supra*, are equally applicable here. Like a speedy trial claim, and unlike a double jeopardy claim, there is nothing about the circumstances of the type of claim involved herein that would inherently limit its availability. In every criminal prosecution a defendant could make a motion to dismiss because of the type of evidence presented to the grand jury and, under the rationale espoused by appellant, its denial would be immediately appealable. To allow an immediate appeal under these circumstances would bring about a disruption of the efficiency of the criminal justice system that we are unwilling to countenance.

## CONCLUSION

The order of the district court denying the motion to dismiss on double jeopardy grounds is AFFIRMED. The order of the district court denying the motions to dismiss on the *Petite* policy ground and on the basis of the alleged grand jury irregularities is not appealable. These claims may be asserted if the appellant is subsequently convicted. Accordingly, the appeal on the latter two issues is dismissed.

IT IS SO ORDERED.