664 F.2d 613
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sidney Marvin BILSKY, Robert Clyde Lovell, Joyce Elaine
Lovell, Defendants-Appellants.
Sidney Marvin BILSKY, Robert Clyde Lovell and Joyce Elaine
Lovell, Petitioners,
v.
UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS, Respondent.
 Nos. 81-5148, 81-5149.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 12, 1981.
Decided Nov. 24, 1981.
 
 A. G. Burkhart, Jr., Kemper Durand, Rosenfield, Borod & Kremer, Memphis, Tenn., for defendants-appellants.
 W. Hickman Ewing Jr., U. S. Atty., Devon Gosnell, Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee.
 Before EDWARDS, Chief Judge, ENGEL, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.
 CELEBREZZE, Senior Circuit Judge.
 
 
 1
 The principal issue in this case is whether the district court's denial of a motion to dismiss the indictment for violation of the Speedy Trial Act is appealable prior to trial. We conclude that such a denial fails to fall within the "collateral order" exception pronounced in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and is, therefore, not an appealable decision. Accordingly, we dismiss the appeal for lack of jurisdiction; we also reject the claim for mandamus relief.
 
 I.
 
 2
 On May 13, 1980, a federal grand jury in the Western District of Tennessee returned an indictment against the appellants, Robert Clyde Lovell, Joyce Elaine Lovell, Sidney Marvin Bilsky, and three other defendants, charging them with conspiracy and transportation of stolen merchandise in excess of $5,000.00 in interstate commerce. See 18 U.S.C. Section 2314. A superseding indictment was returned on September 22, 1980, charging appellants with conspiracy and receiving stolen merchandise in excess of $5,000 in interstate commerce. See 18 U.S.C. Section 2315. The different charges arose from the same circumstances.
 
 
 3
 On November 18, 1980, the original indictment was dismissed on the government's motion and trial commenced on the September indictment. That trial was terminated and a mistrial declared on November 28, 1980. A written order declaring a mistrial was entered by the district court on December 4, 1980. A motion for a judgment of acquittal was filed on behalf of all defendants on December 5, 1980; the district court denied the motion on December 9, 1980.
 
 
 4
 On January 15, 1981, the district court denied the appellants' motions to dismiss the indictment for failure to grant a speedy trial. In their motion the Lovells had argued that more than 180 days had elapsed since the original indictment was returned on May 13, 1981, and that the date of the filing of the superseding indictment related back to the date of the filing of the original indictment under 18 U.S.C. Section 3161(d)(1).
 
 
 5
 On February 17, 1981, the case was set for retrial on March 9, 1981. On February 26, 1981, the Lovells filed another motion to dismiss for failure to comply with the Speedy Trial Act. Bilsky filed a similar motion on February 27, 1981. In those motions the appellants argued, in contradiction to their earlier argument, that the September 22 superseding indictment was the only relevant indictment, and that since the case had not been set for retrial within 70 days of the date on which the order declaring the mistrial was entered as required by the Speedy Trial Act, dismissal of the indictment was mandated. The district court denied the motions to dismiss and entered a written order to that effect on March 3, 1981. First, the court concluded that the time of filing of the superseding indictment related back to the date of the original indictment of May 13, 1980. Since the sanctions to be imposed for failure to comply with the provisions of the Speedy Trial Act were applicable only to indictments returned "on or after July 1, 1980," they were not relevant to the present case. Second, the court held that the plan for "Suspension of Speedy Trial Limits" in the Western District of Tennessee as approved by the Judicial Council of the Sixth Circuit provided that a retrial after a mistrial could be held within 180 days of the mistrial, and therefore the retrial schedule for March 9, 1981 was timely. And third, Judge McCrae found that even if the retrial should have been held within 70 days of the mistrial, the confusion created in the Western District of Tennessee regarding the suspension of the Speedy Trial Act sanctions dictated that the "interests of justice" would best be served by determining the period between 70 days after the mistrial and March 9, 1981, to constitute excludable delay.
 
 
 6
 On March 4, 1981, the Lovells and Bilsky filed a notice of appeal from the order denying their motion to dismiss; the Lovells also filed a petition for a writ of mandamus. On March 5, 1981, the district court conducted a hearing on the status of the case and ruled that the trial would proceed on March 9, 1981. That same day the appellants filed a petition for a stay or extraordinary writ seeking to prevent the case from going to trial on March 9, 1981. This court granted the stay so that the district court would have an opportunity to rule on the motion for a stay. After a hearing on the motion, the district court denied the application for a stay on March 16, 1981. On April 3, 1981 we directed that the appeal in Case No. 81-5148 (Bilsky) and the appeal and mandamus petition in Case No. 81-5149 (Lovells) be presented to and considered by a panel of this court.
 
 II.
 
 7
 As a threshold matter we must determine whether the order denying appellants' motions to dismiss the indictment because of a violation of the Speedy Trial Act is appealable prior to trial. The right of appeal in a criminal case "is purely a creature of statute," Abney v. United States, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977), and the applicable statute in this case restricts this court's appellate jurisdiction to appeals taken from "all final decisions of the district courts ...." 28 U.S.C. Section 1291 (1976). The prerequisite of a "final decision" reflects a congressional policy to promote efficient judicial administration by avoiding the delays and disruptions inherent in interlocutory or "piecemeal" appeals. The finality requirements assumes special significance in criminal cases where swift and efficient administration of justice is in the interest of both society and accused. As the Supreme Court has emphasized, "the rule of finality has particular force in criminal prosecutions because encouragement of delay is fatal to the vindication of the criminal law." United States v. McDonald, 435 U.S. 850, 853-54, 98 S.Ct. 1547, 1548-49, 56 L.Ed.2d 18 (1978), quoting Cobbledick v. United States, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940). See also Abney v. United States, supra, 431 U.S. at 657, 97 S.Ct. at 2039; DiBella v. United States, 369 U.S. 121, 126, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962).
 
 
 8
 As a general rule, a pretrial order denying a defendant's motion to dismiss an indictment is not an appealable "final decision" under Section 1291. See e.g. United States v. Sisk, 629 F.2d 1174, 1180 (6th Cir. 1980).[1] This rule, however, is easier stated than applied. Indeed, the Supreme Court has recognized the problems inherent in the operation of the finality requirement, stating in Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974), that "(n)o verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future."
 
 
 9
 On several occasions the Supreme Court has departed from the rule that finality is required as a predicate for federal appellate jurisdiction. In criminal cases those departures have involved fundamental rights where the order of the district court "finally determined claims of rights separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed.2d 1528 (1949). The Supreme Court in Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), summarized the three requirements of the Cohen collateral order doctrine. To be appealable, a district court's order must 1) conclusively decide the disputed issue; 2) resolve an important issue separate and independent from the merits of the action; and 3) be effectively unreviewable on appeal from a final judgment. Id. at 468-69, 98 S.Ct. at 2457-58. In Coopers & Lybrand, the Court applied these criteria and held a district court's order denying class certification to be non-appealable because 1) the district court could subsequently revise the order; 2) the class determination involved consideration of factors intertwined with the merits of the action; and 3) effective review after final judgment was available. Id. at 469, 98 S.Ct. at 2458.
 
 
 10
 Application of the Cohen criteria to a double jeopardy claim produced a different result in Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). There the Court concluded that a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds was a collateral order that fell within the "small class of cases" that are exceptions to the finality requirement. First, the Court noted that a pretrial order denying the motion to dismiss was a complete and final rejection by the trial court of the claim. Second, a double jeopardy claim was collateral to and independent of the merits of the case, i. e., guilt to innocence. Most important, the Court emphasized that the double jeopardy claim involved an important right which would be irreparably lost if appellate review had to await adjudication on the merits. The rights conferred on an accused by the Double Jeopardy Clause constituted a guarantee against being put to trial twice for the same offense. Those rights would be lost if a criminal defendant were forced to endure a trial prior to appellate review. In such a situation the defendant "is contesting the very authority of the Government to hale him into court to face trial on the charge against him ...." Id. at 659-60,[2] 97 S.Ct. at 2040.
 
 
 11
 In stark contrast to Abney is the Court's decision in United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), holding that a district court's order denying a motion to dismiss the indictment because of an alleged violation of the sixth amendment right to a speedy trial was not appealable before trial. In analyzing the claim under the Cohen criteria, the Court found each factor unsatisfied. First, the pretrial rejection of the speedy trial claim did not constitute a complete and final rejection, in the district court, of the sixth amendment claim. "The resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case. As is reflected in the decisions of this Court, most speedy trial claims, therefore, are best considered after the relevant facts have been developed at trial." Id. at 858, 98 S.Ct. at 1551. Second, the rejection of a speedy trial motion did not present an issue which was "collateral" to the issues at trial because the determination of prejudice-a central focus of any speedy trial claim-could only be gauged after the trial has been completed. See id. at 856-61, 98 S.Ct. at 1550-53; Barker v. Wingo, 407 U.S. 514, 532-33, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972); Atkins v. Michigan, 644 F.2d 543, 546-47 (6th Cir. 1981). Finally, the Court distinguished the sixth amendment right to a speedy trial from the double jeopardy right asserted in Abney, a case that "involved an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." 435 U.S. at 860, 98 S.Ct. at 1552. While finding a "superficial attraction" in the contention that the right to a speedy trial involved a right not to be subjected to a nonspeedy trial, the Court found it wanting both "doctrinally and pragmatically": "Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial." Id. at 861, 98 S.Ct. at 1553.
 
 
 12
 The Speedy Trial Act differs from the MacDonald Court's interpretation of the sixth amendment right in several respects.[3] While the cases fail to fix any time limit, the Act provides for a 100 day timetable. A defendant must be indicted within thirty days of arrest, 18 U.S.C. Sec. 3161(b), and tried within seventy days thereafter, Id. Sec. 3161(c)(1). A more critical difference is between the dismissals available under the Speedy Trial Act and the Supreme Court interpretations. A finding of a constitutional speedy trial violation mandates dismissal with prejudice. Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). Under the Act, however, dismissal may be with or without prejudice. A dismissal with prejudice by a court bars the reprosecution of a defendant on the same charge, but a dismissal without prejudice does not have the same effect, 18 U.S.C. Sec. 3162(a)(1), (2);[4] the government may reindict the defendant if the court determines that reprosecution is appropriate.
 
 
 13
 Notwithstanding these distinctions, application of the Cohen criteria to a Speedy Trial Act claim produces the same result reached in MacDonald. Admittedly, the district court's order was a complete and final determination of appellant's claims. And appellate review at this time would conclusively determine the disputed question by resolving an issue collateral to and separate from the defendants' guilt or innocence. For unlike a sixth amendment claim, a Speedy Trial Act claim is not measured by prejudice to the defendant which can best be evaluated after a trial. The question remains, however, whether the particular right involved would be "lost, probably irreparably" if immediate appellate review is not available.
 
 
 14
 In MacDonald, the Court emphasized that the sixth amendment's speedy trial guarantee did not embody a right "not to be tried" which must be upheld before trial if it is to be enjoyed at all. Appellants urge that by delineating a timetable in which they must be prosecuted, the Act confers such a right "not to be tried" after expiration of the prescribed period. In other words, they have a right to be tried within a certain time frame or not at all. This "right" is evident, we are told, from the Act's sanctions provisions which mandate that the indictment be dismissed when compliance with the Act is not achieved.
 
 
 15
 Undoubtedly, the Act injected a new concept of immediacy into the fundamental right to a speedy trial guaranteed by the sixth amendment. In setting uniform time limits for all phases of the criminal process it created a right to a trial within a predetermined number of days to which a defendant is entitled to as a matter of law. That is not to say, however, that every defendant is vested with a right not to be tried after expiration of the Act's time limits. To infer such a substantial right from the Act's remedy, i. e., dismissal, would ignore the relativity of the right. The right is not absolute in the same sense as the double jeopardy rights vindicated in Abney. While dismissal is mandatory when the Act is violated, the dismissal does not necessarily terminate the prosecution of the defendant. The court is given ample latitude to dismiss the case without prejudice so as to allow the government to recommence prosecution. In this respect the Speedy Trial Act does not attempt to insulate a defendant from trial, but from delay. As the Ninth Circuit has noted in finding the denial of a motion to dismiss on Speedy Trial Act grounds to be non-appealable: "It is the delay and not the trial that is the target of the Act. Proceeding with trial does not cause or compound the harm at which the statute is aimed." United States v. Mehrmanesh, 652 F.2d 766 (9th Cir. 1981). The absence of an absolute right to be free from trial and conviction convinces us that delaying review until after final judgment will not prevent the issuance of effective relief. While it is true that post-conviction relief will not spare the defendant the burden of defending himself at trial, there are many rights that cannot be vindicated by interlocutory appeal if a motion to dismiss is denied by the district court before trial. See United States v. Brizendine, 659 F.2d 215 (D.C.Cir.1981) and cases cited therein.
 
 
 16
 If we were to hold that the appellants' claims are appealable at this stage, we would open the door to countless interlocutory appeals which would prove counterproductive. In MacDonald, the Court listed several important policy considerations which "reinforced" its conclusion, policies which apply with equal force in the instant case. Foremost among these is the nature of the criminal process in which there is inevitably delay between the indictment and trial stages. The inherent delay would permit virtually every defendant to raise a pretrial motion for dismissal on speedy trial grounds. If the denial of that motion were immediately appealable, the result would seriously exacerbate pretrial delay at the expense of the finality requirement. Moreover, "allowing an exception to the rule against pretrial appeals in criminal cases for speedy trial claims would threaten precisely the values manifested in the Speedy Trial Clause." 435 U.S. at 862, 98 S.Ct. at 1553. To permit an interlocutory appeal and the attendant delay would run counter to the spirit of the Act which is to compel the acceleration of trials and expedite the administration of criminal justice. It would allow a defendant who contends the government has already taken too long to protract further the timetable of justice. That result necessarily impairs society's interest in the quick disposition of criminal cases, an interest strongly reflected in the Act's legislative history. See H.R.Rep.No. 1508, 93d Cong., 2d Sess. 8-9, reprinted in 1974 U.S.Code Cong. & Ad.News at 7402; H.R.Rep.No. 390, 96th Cong., 1st Sess. 3, reprinted in 1979 U.S.Code Cong. & Ad.News 805, 807.
 
 
 17
 Accordingly, the order of the district court denying the appellants' motions to dismiss the indictments is not subject to interlocutory appeal.
 
 III.
 
 18
 In the alternative the Lovells have requested mandamus relief from the district court's order denying their motion to dismiss. Mandamus under 28 U.S.C. Section 1651 is an extraordinary writ of limited dimensions. Allied Chemical Corp. v. Daiflon, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). Mandamus is particularly inappropriate when a criminal prosecution is involved, since it results in the delay which is adverse to the administration of justice. Indeed, the Supreme Court "has never approved the use of the writ to review an interlocutory procedural order which did not have the effect of a dismissal." Will, 389 U.S. at 98, 88 S.Ct. at 275. As we have noted, "before a petitioner may resort to the extraordinary writ of mandamus, he must establish that he has a clear and certain right and that the duties of the respondent are ministerial, plainly defined and peremptory." Martins Ferry Hospital Ass'n v. N.L.R.B., 654 F.2d 455 (6th Cir. 1981).[5] Under the standard reiterated in Martins Ferry, mandamus might be an appropriate remedy when the district court has made a simple mathematical mistake in its computation of the number of days permitted under the Speedy Trial Act. See Mehrmanesh, supra, 652 F.2d at 769-70. In this case no claim has been made that the district court went awry in its computations; it is clear that more than the seventy days allowed for the commencement of a retrial pursuant to a declaration of a mistrial under Section 3161(e) had expired. What is at issue are the claims that the delay was excusable and therefore the Act has not been violated. The district court justified the seventy-plus day interval on two grounds. First, it reasoned that the date of the superseding indictment, September 22, 1980, related back to the date of the original indictment, May 13, 1980. Since the dismissal sanctions of the Speedy Trial Act apply only to indictments returned on or after July 1, 1980, they would be inapplicable here. The relation back theory may have merit. Where an indictment is dismissed on the defendant's motion, and a subsequent indictment is brought based on the same events, the time limits set forth in the Act run from the date of the subsequent indictment. Section 3161(d)(1). Quite clearly there is no relation back. When the government's motion procures the indictment, however, under Section 3161(h)(6) the time between the dismissal of the indictment and the refiling of charges is classified as excludable delay. The government argues that this suggests that the time from the first indictment to the dismissal is counted in the time period in which the defendant must be tried. In other words, when the government moves to dismiss an indictment, the timetable is tolled until the reindictment when the count begins where it left off. See United States v. Dennis, 625 F.2d 782, 793 (8th Cir. 1980).
 
 
 19
 The second justification for conducting the retrial more than seventy days after the declaration of the mistrial revolves around the emergency relief provisions of the Act. Section 3174 enables the judicial council of the circuit to suspend certain time limits contained in the Act.
 
 
 20
 On June 3, 1980, a resolution was filed by the Speedy Trial Planning Group for the Western District of Tennessee with the Judicial Council of the United States Court of Appeals for the Sixth Circuit for suspension of the time limits under the Speedy Trial Act. Application was made for a one year suspension of the time limits by the Chief Judge, Robert M. McRae, Jr., pursuant to Section 3174. That application included the following provision under the heading Time Within Which Trial Must Commence : (b) Retrial; Trial after Reinstatement of an Indictment or Information. The retrial of a defendant shall commence within 180 days from the date the order occasioning the retrial becomes final, as shall the trial of a defendant upon an indictment or information dismissed by a trial court and reinstated following an appeal. Section 3161(d)(2), (e) The plan was approved by the Sixth Circuit Judicial Council. The plan for suspension of the time limits as submitted by the Chief Judge clearly provides for retrials to take place 180 days after the order on the retrial becomes final.
 
 
 21
 Section 3174(b) provides in pertinent part:
 
 
 22
 (b) If the judicial council of the circuit finds that no remedy for such congestion is reasonably available such council may, upon application by the chief judge of a district, grant a suspension of the time limits in Section 3161(c) in such district for a period of time not to exceed one year for the trial of cases for which indictments or informations are filed during such one-year period. During such period of suspension, the time limits from arrest to indictment, set forth in Section 3161(b), shall not be reduced, nor shall the sanctions set forth in Section 3162 be suspended; but such time limits from indictment to trial shall not be increased to exceed one hundred and eighty days.
 
 
 23
 Appellants have argued that this section empowers the judicial council to suspend only the time limit for commencement of trial set forth in Section 3161(c), and not the limits for a retrial set out in Section 3161(e). Thus, they assert that the judicial council exceeded its statutory authority in authorizing an increase in the period between mistrial and retrial from 70 to 180 days.
 
 
 24
 In response the government urges us to read the statute in a more liberal fashion. The government emphasizes that the subsequent sentence of the section specifically prohibits suspension of the time limits applicable to Section 3161(b) (requiring an indictment within 30 days of arrest) and also forbids suspension of the sanctions of Section 3162. Had Congress intended to proscribe the suspension of the time for a retrial, the argument goes, it would have expressly provided for such. Since it did not, this circuit's judicial council had the implicit authority to suspend the timetable of Section 3161(e).
 
 
 25
 We have considered these arguments at length and conclude that the debate between the parties concerns solely issues of law. Even assuming-and in no way do we express any views on the merits of the various controversies-that the district court is wrong on all points, his errors are not the kind, grounded on differing perceptions of statutory interpretation, that are appropriate for mandamus review. In this situation mandamus is not an appropriate substitute for appeal. See Mehrnamesh, supra.
 
 
 26
 The appeals are dismissed. The petitions for mandamus are denied.
 
 
 
 [1]
 See also United States v. Brizendine, 659 F.2d 215 (D.C.Cir.1981) (denial of motion to dismiss based on claim of vindictive prosecution not appealable); United States v. Sears, Roebuck and Co., Inc., 647 F.2d 902, 903 (9th Cir. 1981) (claim of estoppel not subject for interlocutory appeal); United States v. Layton, 645 F.2d 681, 683 (9th Cir. 1981) (denial of motion to dismiss for lack of subject matter jurisdiction not appealable); United States v. Feeney, 641 F.2d 821, 824 (10th Cir. 1981) (denial of motion to quash subpoena not appealable); State of Minnesota v. Pickands Mather & Co., 636 F.2d 251, 253-54 (8th Cir. 1980) (order denying leave to file third party complaints based on claim for contribution not appealable); United States v. Garner, 632 F.2d 758, 762-65 (9th Cir. 1980) (denial of order to dismiss indictment based on grand jury jury irregularities not appealable); United States v. Sorren, 605 F.2d 1211, 1213-14 (1st Cir. 1979) (challenge to personal jurisdiction over defendant not appealable); United States v. Mock, 604 F.2d 336, 339-40 (5th Cir. 1979) (denial of motion in limine to suppress evidence on basis of collateral estoppel not appealable); United States v. Valenzuela, 584 F.2d 375, 377-78 (10th Cir. 1978) (denial of motion to dismiss based on violation of government's "Petite" policy not appealable)
 
 
 [2]
 In a similar vein, the Court in Helstoski v. Meanor, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979), held the denial of a motion to dismiss an indictment because the allegedly criminal conduct was immunized by the Speech and Debate Clause was appealable prior to trial. Noting that "the Speech or Debate Clause was designed to protect Congressmen 'not only from the consequences of litigation's results but also from the burden of defending themselves,' " the Court concluded that the right would be lost if the defendant were exposed to prosecution prior to appellate review. Id. at 508, 99 S.Ct. at 2449
 Another case analogous to Abney is Forsyth v. Kleindeist, 599 F.2d 1203 (D.C.Cir.1979), where the court considered whether the denial of a defendant's motion for summary judgment on the issue of absolute immunity was appealable. In finding appellate jurisdiction the court reasoned that the doctrine of absolute immunity protected right similar to those insulated by the double jeopardy clause insofar as the purpose of the absolute immunity doctrine is "as much to protect the relevant persons from a trial on their actions as it is to protect them from the outcome of trial." Id. at 1208 quoting Briggs v. Goodwin, 569 F.2d 10, 59 (D.C.Cir.1977), cert. denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).
 
 
 [3]
 Indeed, the House Committee Report found the Act was "necessary in order to give real meaning" to the speedy trial guarantee. H.R.Rep.No. 1508, 93d Cong., 2d Sess. 11-12, reprinted in 1974 U.S.Code Cong. & Ad.News 7401, 7404
 
 
 [4]
 The Act enumerates four factors a judge shall consider in determining whether to dismiss with or without prejudice: 1) the seriousness of the offense; 2) the facts and circumstances of the case which led to the dismissal; 3) the impact of a reprosecution on the administration on the Act; and 4) the impact of a reprosecution on the administration of justice. 18 U.S.C. Sec. 3162(a)(2)
 
 
 [5]
 However, the Supreme Court has noted that while an interlocutory order may not be appealable, if irreparable harm seems imminent, a party might seek to have the district court certify the question for interlocutory appellate review pursuant to 28 U.S.C. Section 1292(b), and, in exceptional circumstances, seek a writ of mandamus from a court of appeals. Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 378 n.13, 101 S.Ct. 669, 676 n.13, 66 L.Ed.2d 571 (1981) (order denying motion to disqualify opposing party's counsel in a civil case not appealable.)